# STATE OF MICHIGAN

# COURT OF APPEALS

In re A. B. YORK, Minor.

UNPUBLISHED
March 23, 2017

No. 333672
Oakland Circuit Court
Family Division
LC No. 2015-831013-NA

Before: STEPHENS, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Respondent, W. York III, appeals as of right the trial court's order terminating his parental rights to the minor child under MCL 712A.19b(3)(g), (j), and (k)(*iii*). We conditionally reverse and remand for further proceedings.

## I. INDIAN CHILD WELFARE ACT

Respondent asserted below that the child was eligible for membership in the Cherokee Indian tribe. On appeal, respondent challenges the circuit court's provision of the notice required by the Indian Child Welfare Act (ICWA), 25 USC 1912(a). Respondent argues that this statute required petitioner to provide the relevant Cherokee tribe with notice of both the original and amended petitions seeking jurisdiction over the minor child.[1] Respondent complains that the circuit court violated 25 USC 1912(a), which provides:

> In any involuntary proceeding in a State court, *where the court knows or has reason to know that an Indian child is involved,* the party seeking the foster care placement of, or termination of parental rights to, an Indian child *shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail* with return receipt requested, *of the pending proceedings and of their right of intervention.* If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. [Emphasis added.]

---

[1] We generally consider de novo legal issues, like those "involving the application and interpretation of [the] ICWA." *In re Morris*, 491 Mich 81, 97; 815 NW2d 62 (2012). We review for clear error "[a]ny underlying factual findings." *In re Johnson*, 305 Mich App 328, 331; 852 NW2d 224 (2014).

To establish compliance with this notice provision, the circuit court

> must maintain a documentary record including, at minimum, (1) the original or a copy of each actual notice personally served or sent via registered mail pursuant to 25 USC 1912(a), and (2) the original or a legible copy of the return receipt or other proof of service showing delivery of the notice. . . . [T]he proper remedy for an ICWA-notice violation is to conditionally reverse the trial court and remand for resolution of the ICWA-notice issue. [*In re Johnson*, 305 Mich App 328, 331-332; 852 NW2d 224 (2014).]

At a preliminary hearing on April 23, 2015, both the child's attorney and the caseworker, Katherine Oren, informed the court that respondent had asserted that the child was eligible for membership in the Native-American Cherokee tribe. The circuit court adjourned the hearing to determine whether the child had Native-American heritage. At a hearing on June 8, 2015, the circuit court stated that responses had been received from different facets of the Cherokee Nations, but the court was still waiting for a response from the Eastern Band of Cherokee tribe. The caseworker reported that she had received a response from the Eastern Band of Cherokee, which, like the other two Cherokee tribes, had declined to intervene.

At a hearing on July 15, 2015, the caseworker stated that she had "not received a letter back from the[]" Eastern Band of Cherokee Indians, but she had received "a green [notice] card indicating that they received it in April" 2015. Petitioner's counsel reported that she had "copies of all of the green cards and also all of the letters that we've received back from all the tribes except for the Eastern Band, as well as . . . what the Department has sent out." On August 31, 2015, petitioner's counsel provided the circuit court with the "last letter from the Eastern Band of Cherokee Indians . . . indicating that [the child] is not . . . eligible to register as a member of this tribe," and the "tribe is not intervening."

Respondent acknowledges that petitioner and the circuit court properly served notice of this child protective proceeding on the Cherokee tribes that respondent identified as potentially interested in the child and served notice of the potential tribal right to intervene. Respondent complains, however, that the circuit court erred by failing to notify the tribes of petitioner's filing of an amended petition. Respondent identifies no authority specifically requiring the circuit court to re-notify tribes of an amended petition for permanent custody, and the statutory language does not support respondent's argument. The statute provides that where the court has reason to know that an Indian child may be involved, the petitioner is only required to notify the child's tribe "of the pending proceedings and of their right of intervention." 25 USC 1912(a). The statute does not require notice of each petition filed in a proceeding.

However, our review of the record fails to disclose any documentary evidence of tribal notices, proofs of service, or tribal refusals to intervene.[2] Accordingly, the existing record does

---

[2] Petitioner repeatedly asserts that its review of the legal file revealed "a copy of the DHS-120 Form, Notice of Proceedings Concerning North American Indian Child, that Petitioner sent to the three Cherokee tribes and the green registered mail return receipt cards, as well as the three responses received by these tribes." The record received by this Court does not contain any of this documentation in the file.

not allow this Court to determine whether the circuit court properly served the notice mandated by 25 USC 1912(a). *In re Johnson*, 305 Mich App at 331-332. Because the record contains none of the requisite documentation that the circuit court allegedly served on three Cherokee tribes, and because we conclude in sections II and III of this opinion that the circuit court otherwise properly terminated respondent's parental rights, we conditionally reverse the order of termination and remand for further proceedings. See *In re Morris*, 491 Mich 81, 112, 122-123; 815 NW2d 62 (2012). On remand, the circuit court shall determine that notice was properly made to the appropriate entities. If the circuit court determines that notice was properly made to the appropriate entities and that the ICWA does not apply because the child does not qualify as an Indian child or because the properly noticed tribes declined intervention or did not timely respond upon proper notice, the circuit court's termination order shall be reinstated. *Id*. at 123. If, however, the circuit court determines that the ICWA does apply, the circuit court's termination order shall be vacated and all proceedings must begin anew in accordance with the procedural and substantive requirements of the ICWA.

## II. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the circuit court erred in finding that grounds for termination were established under MCL 712A.19b(3)(g), (j), and (k)(*iii*). We disagree.[3]

### A. MCL 712A.19b(3)(g)

Pursuant to MCL 712A.19b(3)(g), a circuit court can terminate a respondent's parental rights "if the court finds, by clear and convincing evidence," that "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." Contrary to respondent's contention, clear and convincing evidence established his failure to properly care for, protect, and supervise the child, and it established the unlikelihood that he will be able to improve his parenting skills within a reasonable period of time. *In re JK*, 468 Mich 202, 213-214; 661 NW2d 216 (2003).

The mother and respondent testified that they had provided most of the child's care and supervision. But the child generally spent a day each weekend with the maternal grandparents and the paternal grandmother. The mother usually cared for the child during the daytime hours when respondent slept and the evening hours when respondent worked.

---

[3] The petitioner bears the burden of proving a statutory ground for termination by clear and convincing evidence. MCL 712A.19b(3); *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). We review the trial court's findings regarding the existence of a statutory ground for termination for clear error. *In re Trejo*, 462 Mich at 356-357. A decision qualifies as clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003). Clear error signifies a decision that strikes this Court as more than just maybe or probably wrong. *In re Trejo*, 462 Mich at 356. We "give deference to the trial court's special opportunity to judge the credibility of the witnesses." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

On the evening of April 3, 2015, the child, respondent, the mother, and the grandparents colored Easter eggs. Respondent and the mother left the child in the custody of the maternal grandparents, and the child then was behaving normally. On April 4, 2015, the child's mother was sleeping in a bedroom when the maternal grandparents returned the child to the home he shared with respondent and the mother at approximately 10:00 a.m. The mother testified that she heard her parents drop the child off, and the child was crying the whole time. The mother went back to sleep and woke up and the child was still screaming. Respondent was changing the child's diaper as the child continued to scream. The mother laid back down because she thought the child was teething. The mother awoke again when respondent brought the child into the bedroom. Respondent explained that he had to perform cardiopulmonary resuscitation (CPR) on the child, who was awake in respondent's arms. The mother then saw the child "start to go limp," so respondent again performed CPR to the child, and the mother called 911. Later, respondent told the mother that the child had been screaming, respondent placed the child in a swing, respondent went to cook breakfast, respondent "heard gurgling, because [the child] had abruptly stopped crying, and" respondent took the child to show the mother that he was not breathing.

Respondent testified that the child began crying between 10:30 and 11:00 a.m., respondent changed the child's diaper, the child stopped crying, the child began crying again, and respondent fed the child. Respondent put the child in a small chair or swing, the child started crying again, the child stopped crying as respondent approached, and respondent noticed that the child's arms appeared limp. Because the child was not breathing, respondent placed him on the living room floor and administered CPR on the child, and respondent noticed that the child had resumed breathing. Respondent took the child into the mother's bedroom and awoke her, the child again appeared limp, respondent again performed CPR on the child, and the mother called 911. Respondent denied doing anything to contribute to the child's traumatic injuries.

The maternal grandfather testified that on the morning of April 4, 2015, the child seemed normal and content when he awoke, ate, and interacted with the grandfather. When the grandfather dropped off the child at respondent's home at approximately 10:30 a.m. on April 4, 2015, the child was happy and behaving normally.

Dr. Marcus DeGraw, an expert in child abuse pediatrics, reviewed the child's medical records and opined that the child suffered physical abuse in April 2015. The records revealed no preexisting medical basis for an injury that could potentially have explained the extensive, life-threatening injuries the child experienced in April 2015, which required "life-saving medical intervention." After the child's hospitalization in April 2015, respondent's and the mother's attorneys suggested that "the [maternal] grandma possibly fell while holding the child about a week" before he went to the hospital, respondent possibly fell while holding the child, and a crib possibly "semi-collapsed with the child in it." However, Dr. DeGraw denied that any of the suggested explanations could have caused the injuries that the child suffered, including "acute bleeding inside his head, intracranial bleeding, both subdural and subarachnoid . . . bleeding, and . . . extensive retinal hemorrhaging in both eyes." Dr. DeGraw testified that the extensive hemorrhaging in the child's skull and retinas only could have resulted from "severe head trauma, possibly with shaking, certainly with repetitive . . . either acceleration, deceleration, like with shaking or repetitive blunt force trauma." The child's extensive injuries most likely derived from physical abuse of the child that was inflicted within a few hours and one or two days of the

child's admission to the hospital. The circuit court properly deemed Dr. DeGraw's testimony credible and relied on his expert testimony in its entirety. *In re HRC*, 286 Mich App 446, 459; 781 NW2d 105 (2009).

John Nagy, a detective with the Oakland County Sheriff's Department, and Katherine Oren, the Children's Protective Services (CPS) worker, testified that they saw bruising on the child's left shoulder, lower left back, middle chest, and abdomen when they saw the child at the hospital on April 4, 2015. Nagy interviewed respondent and the mother, who agreed that respondent was the last person alone with the child. Respondent submitted to a drug screen on April 4, 2015, which tested positive for marijuana.

Clear and convincing evidence supported that respondent failed to provide proper care for the child. MCL 712A.19b(3)(g). The evidence agreed that the child appeared normal when he arrived in respondent's custody on the morning of April 4, 2015. The evidence also agreed that while in respondent's sole custody, the child suffered grave physical injuries that required life-saving medical treatment. Clear and convincing evidence also proved the unlikelihood that respondent might rectify his parental shortcomings within a reasonable time in light of the child's age. *In re LE*, 278 Mich App 1, 28; 747 NW2d 883 (2008); *In re Dahms*, 187 Mich App 644, 648; 468 NW2d 315 (1991). The record showed that respondent consistently denied injuring the child on April 4, 2015. The grave nature of the child's injuries and respondent's consistent refusal to accept responsibility for the child's injuries clearly and convincingly established the unlikelihood that he would improve his parenting abilities within a reasonable time in light of the child's very young age. *In re LE*, 278 Mich App at 28; *In re Dahms*, 187 Mich App at 648.

## B. MCL 712A.19b(3)(j).

A circuit court also can terminate parental rights if the record clearly and convincingly establishes that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." MCL 712A.19b(3)(j). The record clearly and convincingly established that the event precipitating the child protective proceeding involved respondent's infliction of physical injuries to the child, which required that the child receive life-saving treatment. The record also clearly and convincingly proved that respondent consistently failed to accept responsibility for causing the child's severe injuries. We detect no clear error in the circuit court's conclusion that clear and convincing evidence established the likelihood that the child remained at risk of harm in respondent's care. See *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011).

## C. MCL 712A.19b(3)(k)(*iii*)

The record also supports the trial court's termination of respondent's parental rights pursuant to MCL 712A.19b(3)(k)(*iii*), which authorizes termination if a "parent abused the child or a sibling of the child and the abuse included . . . [b]attering, torture, or other severe physical abuse." Dr. DeGraw testified that the child suffered "acute bleeding inside his head, intracranial bleeding, both subdural and subarachnoid . . . bleeding, and . . . extensive retinal hemorrhaging in both eyes," which required live-saving measures to revive the child. The extensive hemorrhaging in the child's skull and retinas only could have resulted from "severe head trauma,

possibly with shaking, certainly with repetitive . . . either acceleration, deceleration, like with shaking or repetitive blunt force trauma." We conclude that the repetitive blunt force trauma or shaking the child endured qualifies as "severe physical injury" under MCL 712A.19b(3)(k)(*iii*). See *In re England*, 314 Mich App 245, 254; 887 NW2d 10 (2016). The testimony of respondent, the mother, and the maternal grandfather agreed that only respondent had access to the child when his injuries likely occurred.

### III. BEST INTERESTS

Respondent also argues that the circuit court erred in analyzing the child's best interests. Respondent contends that the court failed to consider that the child was in relative placement with his mother and also erred by ignoring the best-interest factors in MCL 722.23, MCL 710.22, and guidelines issued by the Michigan Supreme Court regarding potential best-interest factors. We disagree.

Once the petitioner has established a statutory ground for termination, the circuit court must order termination of parental rights if a preponderance of the evidence establishes that "termination of parental rights is in the child's best interests." MCL 712A.19b(5); *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015).[4] In *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014), this Court summarized:

> The trial court should weigh all the evidence available to determine the children's best interests. To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [Citation and quotation marks omitted.]

The circuit court did not clearly err in finding that a preponderance of the evidence showed that termination of respondent's parental rights served the child's best interests. Oren testified that a minimal bond existed between the child and respondent, who last saw each other in early April 2015. A psychologist testified that a March 1, 2016 psychological evaluation of respondent revealed that he continued to deny having shaken the child "in any way or that he did anything inappropriate with the baby," which contravened the medical findings regarding the child's injuries. The psychologist and Oren recommended against the child's placement with respondent because the circumstances "when the injuries occurred to the child . . . are still present today," and they would place "the child at risk of further injury." Oren testified that in January 2016, the child had returned to the mother's sole custody and had no "special health care needs." The child had spent most of his life in temporary care between April 2015 and January 2016, and required permanency and stability. Respondent testified that he had no income at the time of the best-interest hearing. He admitted that he was facing criminal charges for causing the

---

[4] We review for clear error a circuit court's decision to terminate parental rights, including its evaluation of a child's best interests. MCR 3.977(K); *In re Trejo*, 462 Mich at 356-357.

child's injuries, and the criminal case was then pending. The record supports the circuit court's weighing of the relevant best-interest factors and its conclusion that termination of respondent's parental rights served the child's best interests. *In re White*, 303 Mich App at 713.

We reject respondent's argument that the circuit court erred by failing to consider the child's relative placement with his mother. A "child's placement with relatives weighs against termination under MCL 712A.19a(6)(a), which expressly establishes that, although grounds allowing the initiation of termination proceedings are present, initiation of termination proceedings is not required when the children are 'being cared for by relatives.' " *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). In MCL 712A.13a(1)(j), the Legislature defined "relative" as including the following:

> "Relative" means an individual who is at least 18 years of age and related to the child by blood, marriage, or adoption, *as grandparent, great-grandparent, great-great-grandparent, aunt or uncle, great-aunt or great-uncle, great-great-aunt or great-great-uncle, sibling, stepsibling, nephew or niece, first cousin or first cousin once removed, and the spouse of any of the above*, even after the marriage has ended by death or divorce. A stepparent, ex-stepparent, or the parent who shares custody of a half-sibling shall be considered a relative for the purpose of placement . . . . [Emphasis added.]

Respondent's argument ignores that the child's mother does not come within the definition of "relative" in MCL 712A.13(1)(j). Thus, the circuit court was not required to address the child's placement with the mother.

Contrary to respondent's arguments, the circuit court also was not required to address the best-interest factors in MCL 722.23, MCL 710.22(g), or a list published by the Michigan Supreme Court Administrative Office (SCAO), entitled *Child's Best Interests in Termination of Parental Rights Proceedings*, dated August 22, 2013. With respect to the best-interest factors in MCL 722.23, this Court in *In re JS & SM*, 231 Mich App 92, 102; 585 NW2d 326 (1998), overruled in part on other grounds in *In re Trejo*, 462 Mich 341, 353 n 10, recognized that in "determining whether a parent has shown that termination of parental rights is not in the 'best interests' of a child under MCL 712A.19b(5), a [circuit] court is not bound to make findings with regard to the best interests factors of the Child Custody Act, MCL 722.23." Concerning MCL 710.22(g), it plainly identifies best-interest factors in adoption actions, not in the context of child protective proceedings. Respondent identifies no authority holding that the best-interest factors in MCL 710.22(g) apply to the analysis of a child's best interests under MCL 712A.19b(5), or, to the extent that some of those factors may be applicable, that a court is required to consider them. *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012). Lastly regarding the SCAO memorandum, respondent also fails to identify any authority suggesting that the memorandum has the force of law that a circuit court is bound to follow. *Id.* As respondent acknowledges, the memorandum "provided additional factors the trial court *may* consider in regards to best interests." The word "may" signals that the circuit court need not have applied the factors in the SCAO memorandum. See *Manuel v Gill*, 481 Mich 637, 647; 753 NW2d 48 (2008) (citations and quotations omitted) (observing that "the term 'may' is permissive, as opposed to the term 'shall,' which is considered mandatory").

In sum, the circuit court did not clearly err in finding that termination of respondent's parental rights was in the child's best interests.

We conditionally reverse the circuit court's order terminating respondent's parental rights and remand for the circuit court to substantiate that the relevant Cherokee tribes received proper notice under 25 USC 1912(a). We retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro

# Court of Appeals, State of Michigan

## ORDER

In re A. B. York Minor

Docket No.    333672

LC No.        2015-831013-NA

Cynthia Diane Stephens
Presiding Judge

Deborah A. Servitto

Douglas B. Shapiro
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court.  We retain jurisdiction.

Proceedings on remand in this matter shall commence within 42 days of the date of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, the order terminating respondent's parental rights to A. B. is conditionally reversed and remanded to the trial court for resolution of the notice requirements of the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq*.  The proceedings on remand are limited to this issue.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.  Upon receipt, appellant shall provide a copy of the transcript(s) to the Court.

/s/ Cynthia Diane Stephens

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

March 23, 2017
Date

Chief Clerk