# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* S. BROWN, Minor.

UNPUBLISHED
January 18, 2018

No. 338467
Schoolcraft Circuit Court
Family Division
LC No. 2016-003224-NA

AFTER REMAND

Before: K. F. KELLY, P.J., and BECKERING and RIORDAN, JJ.

PER CURIAM.

This case returns to us after remand to the trial court for a proper articulation of the statutory basis for termination of respondent's parental rights to her minor child.[1] We instructed the trial court on remand to apply all relevant statutes and court rules, including the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq*., and the Michigan Indian Family Preservation Act (MIFPA), MCL 712B.1 *et seq*.[2] The trial court addressed these matters at a hearing attended by the parties and then issued a corresponding written order. Having reviewed the hearing transcript and the court's order, we affirm the trial court's termination of respondent's parental rights to the minor child.

## I. STATEMENT OF PERTINENT FACTS

On March 17, 2016, petitioner sought jurisdiction over the minor and termination of respondent's parental rights at the initial disposition hearing based on respondent's history of criminal activity (including maintaining a drug house), serious injuries sustained by another of respondent's children while in respondent's custody, and respondent's failure to benefit from services rendered during proceedings involving respondent's four other children.[3] At an

---

[1] *In re S. Brown*, Minor, unpublished opinion per curiam of the Court of Appeals, issued October 12, 2017 (Docket No. 338467).

[2] *In re S. Brown*, Minor, unpublished order per curiam of the Court of Appeals, entered October 12, 2017 (Docket No. 338467).

[3] Respondent and her children are members of the Sault Ste. Marie Tribe of Chippewa Indians. The Tribal court removed respondent's two eldest children from respondent's home in 2013

-1-

adjudication hearing held April 19, 2016, respondent agreed to enter a plea, accept jurisdiction, and follow a treatment plan, and petitioner agreed to rescind the request for termination of respondent's parental rights to the child at the initial disposition hearing. The trial court took jurisdiction over the child, but allowed the child to remain in respondent's custody while respondent participated in services.

On October 20, 2016, the trial court held an emergency removal hearing following respondent's incarceration after police found several pounds of marijuana in her home. Respondent's counsel informed the court that respondent did not object to removal at the time, but that if circumstances changed, respondent would request a further hearing. At the December 16, 2016 continuation of the removal hearing, CPS worker Matthew Eveningred testified that respondent had been compliant with her treatment plan, with the exception of completing a mental health assessment. However, Eveningred was concerned that respondent was continuing to use drugs because she had tested positive for marijuana on two recent occasions. Eveningred also stated that when police raided respondent's apartment in October, they found several pounds of marijuana. He indicated that respondent could lose her public housing due to her criminal activity and the fact that her boyfriend, Brandon Burt, was residing in the apartment in defiance of her treatment plan. Eveningred stated that the marijuana found in respondent's home allegedly belonged to Burt, that it posed a risk of harm to the minor, and that petitioner intended to seek termination of respondent's parental rights.

Heidi Cotey, a member of the Sault Ste. Marie Tribe of Chippewa Indians and a recognized expert in tribal customs, testified that the Tribe supported removal of the minor from respondent's custody and termination of respondent's parental rights. Cotey stated that respondent had been receiving services for several years but continued to place herself in precarious situations, such as allowing Brandon Burt to bring a large quantity of marijuana into her residence. Cotey stated that the Tribe took the position that petitioner had made active efforts to preserve respondent's custody, but that termination proceedings should be conducted and the minor should be placed with her father.

Respondent testified that she did not use marijuana, but could not provide an explanation for the positive drug tests. Respondent indicated that she was not in danger of losing her housing, and that she had scheduled a mental health assessment. Respondent denied that marijuana had been found in her house, and contended that the police report was false.

The trial court ordered that the removal of the minor from respondent's custody be continued, and that her parenting time continue to be supervised. The trial court found that respondent's assertion that no marijuana was discovered in her home was not credible.

Petitioner filed a supplemental petition requesting termination of respondent's parental rights on February 28, 2017. The petition alleged that marijuana was discovered at respondent's home during a police raid on October 14, 2016, that respondent sold Suboxone to a police informant in December 2016, and that respondent was currently incarcerated on charges of

---

because of criminal activity in the home. The children were placed into a relative guardianship in 2015. Respondent voluntarily released her parental rights to two other children in April 2015.

maintaining a drug house and delivery of a controlled substance. The petition also included allegations referencing respondent's history with substance abuse and the prior proceedings involving her other children. The petition requested termination of respondent's parental rights, but it did not identify a specific statutory ground for termination in MCL 712A.19b(3).

The trial court held a two-day termination hearing on April 20 and April 25, 2017. Michigan State Police Trooper Paul Ferraro testified that in October 2016, he executed search warrants on residences occupied by respondent and Brandon Burt to look for stolen items. While doing so he observed marijuana plants and marijuana. Michigan State Police Troopers Thomas Kinnunen and Eric Johnson testified to their involvement in two controlled narcotic purchases of Suboxone from respondent in December 2016.

CPS caseworker Eveningred testified that he had been working with respondent since the summer of 2016. Eveningred stated that petitioner assisted respondent with referrals for substance abuse treatment, parenting classes, and therapy services for the children. Petitioner assisted respondent in securing housing, provided transportation, paid some utility bills, and helped respondent obtain a bridge card. However, respondent was evicted from the apartment where the controlled narcotics purchases took place, and had been incarcerated since February 22, 2017, as a result of charges stemming from the controlled purchases. Eveningred stated that two or three of respondent's drug screens were positive for marijuana. Respondent complied with her treatment plan in that she obtained a mental health assessment, but failed to comply with the plan by living with Brandon Burt, who had a criminal record and previous involvement with CPS. Eveningred acknowledged that respondent acted appropriately during supervised parenting time, but stated that the petition for termination was filed due to the risk of harm to the minor from respondent's continuing criminal activity.

Linda Ryerse, a Family Continuity caseworker for the Sault Ste. Marie Tribe of Chippewa Indians, testified that she met with respondent in May 2016, with the intention of helping respondent connect with other resources. When Ryerse became involved in the case, respondent was also working with a family support worker from the health department. Ryerse stated that respondent chose to continue working with the health department, and so she terminated her involvement in the case. Julie Hardy, a family services caseworker, testified that she worked with respondent and respondent's other four children. The services included parenting, substance abuse, and Family Continuity. Hardy said that her work with respondent ended after the two eldest children went into guardianship and respondent released her parental rights to the two younger children, and that she did not have any direct interaction with respondent regarding the minor at issue. Hardy indicated that respondent had a problem with the abuse of the prescription drug Suboxone.

Tammy Renard, a Family First supervisor and respondent's witness, testified that she worked with respondent in 2014 and 2016. Renard stated that she worked with respondent on skills such as stress management and communications, that respondent was receptive and completed the services, and that respondent acted appropriately with the child. Kelli Beaudry, respondent's former caseworker and respondent's witness, testified that she observed respondent interact with the child, and that respondent acted appropriately. Wendy Joslin, respondent's aunt, testified that respondent took good care of the child and provided the child with all necessities. Joslin stated that she observed a close bond between respondent and the child, that

she never saw marijuana in respondent's residence, and testified that she had no concerns about the child's safety with respondent.

Cotey testified that she had been following respondent's case since respondent came into contact with petitioner, and that she could not think of any services that would be of benefit to respondent that had not been provided. Cotey opined that respondent was unable to provide an adequate home for the minor because respondent had become involved with the legal system for selling marijuana and Suboxone. Cotey stated that such activities were not traditional in the Tribe. Cotey noted that respondent was incarcerated, and opined that respondent would have difficulties finding housing upon her release due to prior evictions. Cotey concluded that the risk to the minor from residing with respondent outweighed the risk of ending the mother-child relationship, and stated that active efforts had been made to reunite respondent and the minor.

The trial court delivered a ruling from the bench, summarizing the evidence presented at the hearing, and noting specifically that respondent chose to become involved in criminal behavior while this case was ongoing and chose to put her own needs before those of the child. The trial court found clear and convincing evidence establishing a statutory ground for termination. However, as we indicated in our previous decision, rather than properly identifying one of the grounds for termination found in MCL 712A.19b(3), the trial court referred to "circumstances described in MCL 712A.2(b)(1) and (2), which is the statute authorizing a court to exercise *jurisdiction* over a child." *In re S. Brown*, Minor, unpublished opinion per curiam of the Court of Appeals, issued October 12, 2017 (Docket No. 338467), p 2. The trial court then reviewed the relevant best-interest factors and concluded that termination of respondent's parental rights was in the child's best interest.

## II. ANALYSIS

### A. STANDARD OF REVIEW

We review for clear error the court's factual findings in order to terminate parental rights. See MCR 3.977(K); *In re Rood*, 483 Mich 73, 90; 763 NW2d 587 (2009). We review de novo issues involving application and interpretation of the ICWA, and a trial court's factual findings underlying the application of the ICWA for clear error. *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 56; 874 NW2d 205 (2015). " 'A finding is "clearly erroneous" [if] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.' " *Rood*, 483 Mich at 91, quoting *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989); *In re Payne/Pumphrey/Fortson*, 311 Mich App at 56-57.

### B. STATUTORY GROUNDS FOR TERMINATION

In an action to terminate parental rights, the petitioner must prove by clear and convincing evidence that at least one statutory ground for termination in MCL 712A.19b(3) exists. MCR 3.977(A)(3) and (H)(3); *In re Trejo*, 462 Mich 341, 356; 612 NW2d 407 (2000). In addition, when terminating a respondent's parental rights to an Indian child, the trial court must also make findings under the ICWA that serious emotional or physical harm to the child would

result from being placed in the parent's custody. 25 USC 1912(f); MCL 712B.15(4); MCR 3.977(G)(2).

In its order following remand, the trial court adopted its original findings of fact and identified the statutory grounds supporting termination of respondent's parental rights as MCL 712A.19b(3)(c)(*i*) and (*ii*). MCL 712A.19b(3)(c)(*i*) and (*ii*) permit termination under the following circumstances:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

The trial court's findings regarding respondent's substance abuse problem and her continuing criminality support termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*). Petitioner based its original petition for removal in part on respondent's history of criminal activity (including operating a drug house). From the time of the initial dispositional hearing in June 2016 until the termination hearing in April 2017, respondent tested positive for marijuana at least two times, was arrested for having several pounds of marijuana in her house, and sold Suboxone to police informants on at least two occasions. At the time of the termination hearing, respondent was incarcerated on drug charges stemming from the controlled purchases. The criminal activity that had served as a basis for removal of respondent's eldest children and of petitioner's original petition to remove the minor at issue continued to exist more than 182 days after issuance of an initial disposition order. Given respondent's lengthy involvement in criminal activity, her denial of substance abuse, and her insistence that police falsified reports of finding marijuana at her home, there seems "no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." Accordingly, the trial court did not err on remand by finding clear and convincing evidence to terminate respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*). Because only one statutory ground is required for termination of parental rights, we need not address the evidence supporting termination pursuant to MCL 712A.19b(3)(c)(*ii*). MCR 3.977(A)(3) and (H)(3); *In re Trejo*, 462 Mich at 356.

In addition to finding a statutory ground for termination, in order to terminate respondent's rights to the Indian child at issue, the trial court also had to make findings under the ICWA that serious emotional or physical harm to the child would result from being placed in the parent's custody. 25 USC 1912(f) provides:

No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

The MIFPA and the Michigan Court Rules impose similar requirements. See MCL 712B.15(4) and MCR 3.977(G)(2).

In its order following remand, the trial court adopted its findings of fact relevant to application of the ICWA and the MIFPA. In its original ruling, the trial court found beyond a reasonable doubt that leaving the minor in respondent's continued custody would likely result in serious emotional or physical damage to the child. Testimony from a qualified expert witness, and other witnesses regarding respondent's continuing criminality and the consequences of that behavior (i.e., having persons come to the residence to buy drugs, police raids, etc.), supports this finding. Heidi Cotey, a member of the Sault Ste. Marie Tribe of Chippewa Indians and a recognized expert in tribal customs, testified that in her opinion the minor at issue was at risk of serious emotional and physical harm if she remained in respondent's custody. At the termination hearing, Cotey noted that respondent engaged in criminal behavior during the pendency of the case even though her parental rights were at risk. This behavior included allowing Brandon Burt to have drugs, including a large quantity of marijuana, in the home, selling Suboxone from the home, and being evicted from her public housing apartment because of charges stemming from the sale of Suboxone.

In light of the foregoing evidence, we conclude that the trial court did not clearly err in its finding that evidence established beyond a reasonable doubt that leaving the minor in respondent's custody would likely result in serious emotional or physical harm to the minor. This finding, along with the trial court's finding that petitioner proved by clear and convincing evidence that at least one statutory ground for termination exists, provides the necessary grounds for the termination of respondent's parental rights, should termination be in the child's best interests.

Respondent raises several issues regarding the trial court's finding of statutory grounds to terminate her parental rights and satisfaction of the requirements imposed by the ICWA and the MIFPA. She first contends that the trial court violated her due process rights by failing to advise her that her plea could be used to terminate her parental rights. Because respondent did not raise it during the plea proceeding, in a motion to withdraw her plea, or otherwise challenge the validity of her plea at any point during the proceedings in the trial court, this issue is unpreserved. *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999). We review unpreserved issues for plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8-9; 761 NW2d 253 (2008).

In order for a trial court to take jurisdiction over minor children, it must find that at least one statutory ground for jurisdiction exists. MCL 712A.2(b). The trial court may make the finding after a trial or based on a plea. *In re SLH*, 277 Mich App 662, 669-670; 747 NW2d 547 (2008). In this case, jurisdiction was established pursuant to respondent's plea. Before

accepting a plea, the trial court must satisfy several procedural safeguards. MCR 3.971(B) requires among other things:

> Before accepting a plea of admission or plea of no contest, the court must advise the respondent on the record or in a writing that is made a part of the file:
>
> * * *
>
> (4) of the consequences of the plea, including that the plea can later be used as evidence in a proceeding to terminate parental rights if the respondent is a parent.

The record of the April 19, 2016 plea proceeding discloses that the trial court violated MCR 3.971(B)(4) by failing to advise respondent that her plea could be used as evidence to terminate her parental rights. The trial court's failure to so advise respondent constituted plain error. *In re Mitchell*, 485 Mich 922; 773 NW2d 663 (2009) (the court committed plain error by failing to advise the respondent that his plea could be used in a later proceeding to terminate his parental rights). However, to be entitled to relief based on this unpreserved issue, respondent must also demonstrate that the error affected her substantial rights. An error affects substantial rights if it is prejudicial, i.e., if it affects the outcome of the proceedings. See *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003).

The error involves the trial court's failure to advise respondent that her plea could later be used as evidence in a proceeding to terminate parental rights. In support of her plea to the trial court's exercise of jurisdiction, respondent admitted to certain historical facts relating to the removal of her other children. Respondent acknowledged that her two older children had been removed from her care in 2013, following a drug raid on her home, and that those children were under a guardianship. Respondent also acknowledged that another child had serious medical issues and suffered a broken leg, which respondent could not explain, that a fourth child was born with Suboxone in his system, and that she had voluntarily released her rights to these two children. These same facts were established at the termination hearing through the testimony of Julie Hardy, the family services caseworker who worked with respondent in the prior proceedings involving the four children. Because petitioner presented independent evidence at the termination hearing to establish the facts elicited in respondent's statements at the plea hearing, the trial court was not required to rely on respondent's statements at the plea hearing. Thus, the trial court's failure to advise respondent that her plea could later be used as evidence in a proceeding to terminate parental rights did not affect the outcome of the proceeding, and therefore, did not affect respondent's substantial rights. *Jones*, 468 Mich at 355.

Respondent next contends that the evidence did not support a finding that petitioner made the requisite active efforts to avoid breakup of an Indian family. We disagree. This Court reviews de novo the application of statutes such as the ICWA and the MIFPA, but reviews the trial court's underlying factual findings for clear error. *In re Payne/Pumphrey/Fortson*, 311 Mich App at 56. The clear and convincing evidence standard applies to a determination whether active efforts were made to prevent the breakup of the family. *In re England*, 314 Mich App 245, 253; 887 NW2d 10 (2016).

Before a trial court may terminate a respondent's parental rights to an Indian child, the court must find that at least one state statutory ground for termination of parental rights in MCL 712A.19b(3) was proven by clear and convincing evidence, and must also make findings under the ICWA that active efforts were made to avoid the breakup of the Indian family, and that those efforts were unsuccessful. 25 USC 1912(d) sets out the active efforts requirement, and provides:

> Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

The MIFPA has a similar provision. MCL 712B.15(3) provides:

> A party seeking a termination of parental rights to an Indian child under state law must demonstrate to the court's satisfaction that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that the active efforts were unsuccessful.

The phrase "active efforts" is defined in MCL 712B.3, and requires "more than a referral to a service without actively engaging the Indian child and family." MCL 712B.3(a). In this case, the undisputed evidence showed that petitioner engaged the Tribe in the case from the beginning, and consulted the Tribe throughout the case to ensure that the services offered were culturally appropriate. Matthew Eveningred, respondent's caseworker, testified that he provided referrals for substance abuse treatment, parenting classes, and therapy for the children. He assisted respondent in obtaining a public housing apartment, provided respondent with transportation when she needed it, assisted her in obtaining a bridge card, and provided funds for past-due utility bills. However, respondent did not cooperate or benefit from the services provided to her. Two or three of respondent's drug screens were positive for marijuana, respondent was evicted from her public housing apartment due to criminal activity (i.e., selling drugs), and respondent continued to live with Brandon Burt, who had a felony record and previous involvement with CPS. Heidi Cotey, a tribal expert witness, testified that she could not think of any relevant service that had not been offered to respondent, and that in her opinion active efforts had been made to reunite respondent and the child. In light of this evidence, we conclude that respondent's allegation that petitioner did not make the requisite active efforts to avoid breakup of an Indian family fails.

Respondent also contends that the trial court focused on her criminality when terminating her parental rights, but did not specifically cite MCL 712A.19b(3)(h) as a statutory ground for termination; therefore, the trial court improperly relied on the fact of respondent's current incarceration as a basis for termination of her parental rights. This Court reviews the trial court's factual findings for clear error. MCR 3.977(K); *In re Rood*, 483 Mich at 90.

MCL 712A.19b(3)(h) permits termination of parental rights in the following circumstance:

The parent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years, and the parent has not provided for the child's proper care and custody, and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

Respondent argues that although the trial court stated that incarceration alone could not serve as a basis for termination of parental rights, the court in fact improperly relied on the fact of her incarceration when deciding to terminate her parental rights. Respondent contends that incarceration alone is not a sufficient basis for terminating parental rights, *In re Mason*, 486 Mich 142, 146; 782 NW2d 747 (2010), and that given that the child was in an appropriate placement with her father, termination was improper. *In re Pops*, 315 Mich App 590, 599; 890 NW2d 902 (2016) (father's incarceration was an insufficient basis for termination of his parental rights when father provided proper care and custody for the child through placement with the grandmother).

First, the trial court did not rely on MCL 712A.19b(3)(h) as a basis for terminating respondent's parental rights. Indeed, the trial court could not have done so because no evidence showed that respondent would be incarcerated for a period exceeding two years. Second, the court acknowledged that incarceration alone is not a sufficient basis for terminating parental rights, but clarified that it was not terminating respondent's parental rights for that reason. The trial court cited repeated instances of respondent's criminality when making its findings, and noted that respondent was incarcerated in the county jail on pending charges, but did not cite an extended period of incarceration as a basis for terminating respondent's parental rights. Thus, the record does not support this claim of error.

In light of the foregoing, we conclude that the trial court did not err in determining that there is a statutory ground for terminating respondent's parental rights, evidence established beyond a reasonable doubt that leaving the minor in respondent's custody would likely result in serious emotional or physical harm to the minor beyond a reasonable doubt, and that active efforts had been made to prevent breakup of the family, but they were unsuccessful. Therefore, the trial court did not err in finding grounds to terminate respondent's parental rights.

## C. BEST INTERESTS

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). "[T]he preponderance of the evidence standard applies to the best-interest determination." *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013).

In determining a child's best interests, the trial court may consider the child's need for stability and permanency and whether the child is progressing in his or her current placement. *In re VanDalen*, 293 Mich App 120, 141; 809 NW2d 412 (2011). In addition, the trial court may consider the children's bond to the parent, the parent's parenting ability, and the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012).

In its order following remand, the trial court adopted its original findings of fact and best-interest analysis. The evidence showed that at the time of the termination hearing, respondent was incarcerated on pending criminal charges, was unemployed, and had unstable housing, and that the child had been placed with her father. The trial court acknowledged that respondent and the child shared a bond, but found that respondent consistently put her own interests ahead of those of the child, and that the child deserved stability and permanence. Based on this evidence, we conclude that the trial court did not clearly err in finding that termination of respondent's parental rights was in the minor's best interests.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Jane M. Beckering
/s/ Michael J. Riordan