*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. HENRY, Minor.

UNPUBLISHED
May 12, 2022

No. 357965
Schoolcraft Circuit Court
Family Division
LC No. 18-003277-NA

Before: GLEICHER, C.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

The circuit court terminated respondent-father's parental rights to his young son, MH, pursuant to MCL 712A.19b(3)(c)(*i*) and (c)(*ii*). Contrary to respondent's protestations, the Department of Health and Human Services (DHHS) presented clear and convincing evidence supporting that respondent had not rectified the conditions that led to adjudication, and the DHHS made active efforts toward reunification as required by the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.* and the Michigan Indian Family Preservation Act (MIFPA), MCL 712A.1 *et seq.* We affirm.

## I. BACKGROUND

The DHHS removed MH from his mother's care when he was five weeks old and placed him with a maternal relative. The Sault Ste. Marie Tribe of Chippewa Indians intervened in the matter as MH is an Indian child through his mother.[1] Respondent was incarcerated at that time for felonious assault and was not identified as MH's father until the child was nearly seven months old. Respondent immediately initiated contact, but visited his son only three times before being arrested for a slew of new charges, including driving under the influence, resisting and obstructing justice, and malicious destruction of police property. Respondent had an extensive juvenile and adult criminal history for offenses involving violence and controlled substances.

Respondent consented to the court's jurisdiction over the child. While incarcerated, the DHHS provided respondent as many services as possible in that environment. In lieu of a

---

[1] The circuit court terminated mother's parental rights and she has not appealed that decision.

parenting class, the caseworker supplied a parenting education workbook for respondent to complete. Respondent began substance abuse programming but was removed from the group after receiving a major misconduct ticket for fighting. This altercation also extended the length of respondent's incarceration. However, respondent continued to visit with MH during his incarceration, both in person and by phone. Respondent's conduct with his child was appropriate.[2]

In June 2021, 2½ years after respondent entered the case, the DHHS filed a supplemental petition seeking termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (c)(*ii*). During the July 2021 termination hearing, respondent indicated that he expected to be released in September. The court found that active efforts were made to prevent the breakup of the Indian family, but that respondent had not sufficiently benefitted from the services provided. Accordingly, the court terminated respondent's parental rights. Respondent now appeals.

## II. STATUTORY GROUNDS FOR TERMINATION

Pursuant to MCL 712A.19b(3), a circuit court "may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence" that at least one statutory ground has been proven by the DHHS. MCR 3.977(A)(3); *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000).[3] The court's termination decision followed the filing of a supplemental petition. When termination is sought in a supplemental petition based on new grounds, the DHHS must present legally admissible evidence in support. *In re DMK*, 289 Mich App 246, 258; 796 NW2d 129 (2010).

We review for clear error a circuit court's factual finding that a statutory termination ground has been established. *In re Rood*, 483 Mich 73, 90-91; 763 NW2d 587 (2009). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted). "Clear error signifies a decision that strikes us as more than just maybe or probably wrong." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009). As there is no dispute that MH is an Indian Child, the court was required to make additional findings in compliance with ICWA and MIFPA, specifically that "active efforts were made to prevent the breakup of the family" and that "proof beyond a reasonable doubt" supported that the parent's continued custody "would likely result in serious emotional or physical damage to the child." *In re England*, 314 Mich App 245, 253; 887 NW2d 10 (2016) (quotation marks and citation omitted).

---

[2] Respondent was released from jail on September 22, 2019, but was reincarcerated three days later for violating parole. At some point, respondent was transferred to prison to complete his sentence.

[3] The circuit court mistakenly applied a beyond-a-reasonable-doubt standard at this stage in the proceedings. See *In re England*, 314 Mich App 245, 253; 887 NW2d 10 (2016) (applying the clear-and-convincing standard under ICWA when analyzing the statutory grounds for termination). The error does not warrant relief as the court found termination supported under a higher burden than necessary.

The circuit court found that termination of respondent's parental rights was supported by MCL 712A.19b(3)(c)(*i*) and (c)(*ii*), which provide:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

The conditions that led to the adjudication were respondent's inability to care for MH, his criminal history, and his lack of housing. The supplemental petition added the criminal offenses respondent committed during these proceedings. Respondent was ordered to receive substance abuse and mental health assessments, attend outpatient therapy if recommended, participate in random drug screens, secure housing and employment, and participate in parenting education through the Sault Ste. Marie Tribe. As respondent was incarcerated for most of the proceedings, he made very little progress with services. He delayed 15 months in signing a release to permit the caseworker to access information about the services he did participate in.

Respondent maintained contact with his child throughout the proceedings. Those interactions were all appropriate. Parenting classes were available during the first three months of respondent's incarceration, but he did not participate. Thereafter, the caseworker provided a parenting workbook to respondent in lieu of classes. It is unclear if respondent completed his assignments.

Respondent did not complete substance abuse or mental health services. He participated in substance abuse therapy in jail, but was removed from the group for fighting. Although respondent blamed the incident on another inmate, the court determined from the evidence that respondent began the altercation. After that incident, respondent began a violence prevention program and appeared to benefit. It appears that respondent submitted to a mental health assessment. However, given his incarceration, respondent never received mental health treatment.

Respondent continued to commit criminal acts resulting in his return to jail twice during these proceedings, and his misconduct while incarcerated resulted in a longer term of commitment. Indeed, respondent remained incarcerated through the July 2021 termination hearing. Although respondent expected to be released in September 2021, he could not guarantee that result.

As for respondent's ability to provide care and custody for MH, respondent could not begin to demonstrate his ability to provide a safe home until his prison release. Respondent would need to secure employment and housing, and remain out of trouble. Given respondent's extensive

-3-

criminal history and multiple incarcerations during these proceedings alone, the court could determine that respondent would be unable to provide a safe home for MH within a reasonable time.

Ultimately, clear and convincing record evidence supported that respondent had not rectified the conditions that led to adjudication, or the new conditions that arose thereafter, and would be unable to rectify those conditions within a reasonable time given MH's age. As such, the circuit court properly determined that termination was supported under factors (c)(*i*) and (c)(*ii*).

However, respondent contends that the court based its termination determination on his incarceration alone in violation of *In re Mason*, 486 Mich 142; 782 NW2d 747 (2010). In *Mason*, 486 Mich at 148, the respondent-father was incarcerated throughout the proceedings, was not provided services, and was excluded from numerous hearings. *Id.* at 148-150. The Supreme Court reversed the termination of the respondent's parental rights as he was not provided a meaningful and adequate opportunity to participate, explaining, "The state is not relieved of its duties to engage an absent parent merely because that parent is incarcerated." *Id*. at 152. "The mere present inability to personally care for one's children as a result of incarceration does not constitute grounds for termination." *Id*. at 160. A respondent can fulfill his or her duty to provide proper care and custody by voluntarily granting legal custody to relatives during the remaining term of incarceration. *Id*. at 163. Moreover, "just as incarceration alone does not constitute grounds for termination, a criminal history alone does not justify termination." *Id*. at 165.

This case is distinguishable from *Mason*. The DHHS and the court engaged respondent in the proceedings as soon as he was identified as MH's father. Respondent was provided services while incarcerated and the caseworker maintained regular contact. Most importantly, the circuit court in this case did not base its termination decision on the mere fact that respondent was incarcerated. Rather, the court noted that respondent had an extensive criminal history and committed further offenses during these proceedings that led to new and extended sentences. Respondent's repeated incarcerations prevented his participation in more in-depth services and left him unable to take custody of his child. And respondent did not adequately benefit from the services that were provided. Unlike in *Mason*, respondent in this case played no part in securing placement of his child during his absences. Accordingly, respondent is not entitled to relief.

## III. ACTIVE EFFORTS

Respondent further contends that the DHHS failed to make active efforts toward reunification as required by ICWA and MIFPA. "Issues involving the application and interpretation of ICWA are questions of law that are reviewed de novo. A court's factual findings underlying the application of legal issues are reviewed for clear error." *In re Morris*, 491 Mich 81, 97; 815 NW2d 62 (2012) (citations omitted).

"The ICWA requires the petitioner in a termination case to 'satisfy the court that active efforts have been made to prevent the breakup of the Indian family . . . .' " *In re JL*, 483 Mich 300, 319; 770 NW2d 853 (2009), quoting 25 USC 1912(d). MCL 712B.3(a) provides:

> "Active efforts" means actions to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and to

reunify the Indian child with the Indian family. Active efforts require more than a referral to a service without actively engaging the Indian child and family. Active efforts include reasonable efforts as required by title IV-E of the social security act, 42 USC 670 to 679c . . . .[4]

See also MCR 3.002(1). "Active efforts" require "affirmative, as opposed to passive, efforts," and "require more than the 'reasonable efforts' required under state law." *JL*, 483 Mich at 321. "Active efforts" means that "the caseworker takes the client through the steps of the plan rather than requiring that the plan be performed on its own." *Id*. (quotation marks and citation omitted). Whether active efforts have been made is judged on the basis of clear and convincing evidence. *In re Beers*, 325 Mich App 653, 680; 926 NW2d 832 (2018).

Respondent asserts that the circuit court failed to identify the standard of proof it relied upon. The court stated that there was "no question" that active efforts were made in this case. This language suggests that the court applied the clear-and-convincing-evidence standard. As clear and convincing record evidence supports the court's conclusion, any error in this regard was harmless.

Tribal foster care worker Alisa Calhoun testified that she made active efforts to reunify MH with respondent. Calhoun provided respondent with parent-agency and case-service plans. She maintained monthly contact with respondent, including sending respondent pictures and updates about MH. Calhoun permitted respondent to have liberal phone contact with the foster parent to stay in contact with MH. When the pandemic interrupted parenting classes in the jail, Calhoun found an alternative, giving respondent a parenting education workbook to complete. Calhoun investigated programming available to respondent, leading to his enrollment in substance abuse and violence prevention programs. Respondent, on the other hand, hindered Calhoun's ability to provide more assistance by delaying 15 months in signing a necessary release form.

Respondent contends that these were the same efforts that would have been made with any other incarcerated parent and therefore do not rise to the level of "active efforts." Calhoun did more than make merely passive referrals. Respondent was offered all relevant services that were available to him while incarcerated. Calhoun sought out substitutes for services that were not available. She even arranged for respondent's transport from jail to the DHHS offices for parenting time. Calhoun testified that she could think of nothing else that could have been offered. And a qualified expert who testified on behalf of the Sault Ste. Marie Tribe opined that active efforts had been made. The circuit court did not clearly err by finding that active efforts were made to prevent the breakup of the Indian family.

---

[4] The statutory definition of "active efforts" includes a nonexhaustive list of suggested actions to preserve the child's cultural identity. The DHHS and the court met this goal by involving the child's tribe in the proceedings and by placing MH with a maternal relative.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra