*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* G. E. CARRILLO, Minor.

UNPUBLISHED
May 19, 2022

No. 359178
Ingham Circuit Court
Family Division
LC No. 21-000630-NA

Before: GADOLA, P.J., and SERVITTO and REDFORD, JJ.

PER CURIAM.

Respondent appeals as of right the October 20, 2021 dispositional order of the trial court ordering her to comply with the case service plan recommended by petitioner, Department of Health and Human Services (DHHS). Respondent also challenges the trial court's August 25, 2021 order authorizing the filing of the petition that initiated the proceedings in this case. We affirm.

## I. FACTS

This appeal arises from child protective proceedings involving respondent's child, GEC. The child's father is deceased. Unlike a typical case involving child protective proceedings, respondent is not seeking to regain custody of GEC, who is now 17 years old. Respondent has repeatedly informed petitioner that GEC is not welcome in her home because of GEC's assaultive behavior. The trial court and petitioner acknowledge that respondent's home currently is not appropriate for GEC in light of GEC's psychological and behavioral problems, the assaultive relationship between respondent and GEC, and respondent's history of alcohol abuse. At petitioner's request, the trial court ordered respondent to participate in numerous services to remove the barriers to placing GEC in respondent's home. Respondent, however, has informed petitioner that she does not want to participate in the services and does not want to achieve the goal of the services, which is placement of GEC in her home.

The events that led to these proceedings began on July 28, 2021, when respondent took GEC to a crisis unit, Beacon Specialized Services (Beacon), because GEC expressed suicidal ideation. At that time, GEC was 16 years old and living with respondent's adult older daughter at a hotel. GEC reportedly was refusing to take medication prescribed for treatment of symptoms of depression. After GEC was admitted to Beacon, respondent attended a family therapy session at

Beacon during which GEC threatened to harm respondent and Beacon's staff. Beacon had scheduled GEC to be discharged that day, and respondent agreed to drive GEC from Beacon to Community Mental Health for further services. During the drive, GEC punched respondent in the head. Community Mental Health thereafter hospitalized GEC at Cedar Creek Hospital (Cedar Creek).

Respondent informed the assigned child protective services worker that she would not allow GEC to move to her home after being released from Cedar Creek. Respondent reported that GEC had assaulted her repeatedly in the past, that she was pressing charges against GEC for the recent physical assault and planned to obtain a personal protection order against GEC, that she did not have the necessary tools to care for GEC, and that no relative was willing to care for GEC because of her assaultive behavior. GEC's older sister reportedly also had obtained a personal protection order against GEC. GEC was moved to a temporary residential facility where GEC was diagnosed with severe major depressive disorder and unspecified anxiety disorder/developmental trauma disorder, and was assessed as having limited insight, judgment, and skills. Respondent thereafter refused to participate in services offered by petitioner.[1]

Petitioner submitted a petition to the trial court requesting that the trial court authorize the petition, take jurisdiction of the child, and remove the child from the home. The petition asserted the bases of jurisdiction over GEC as (1) respondent neglecting and/or abandoning GEC and (2) respondent's home being unfit. The petition further explained that:

> It is contrary to the welfare of [GEC] to remain in the care of her mother [] due to concerns of improper supervision and abandonment. There are concerns for current and historical alcohol abuse. [Respondent] is refusing to pick [GEC] up from Cedar Creek Hospital. [Respondent] has expressed she is no longer willing to care for [GEC] due to [GEC's] behaviors.

The trial court held a preliminary inquiry and at the conclusion authorized the filing of the petition. The trial court found that there was probable cause that one or more of the allegations of the petition were true, and specifically found that it was contrary to GEC's welfare to remain in respondent's home. The trial court further found that custody of GEC with respondent presented "a substantial risk of harm to the child's life, physical health or mental well-being." The trial court ordered that reasonable efforts toward reunification be made. After the petition was filed, respondent told the foster care worker that she did not wish to participate in a family team meeting with the agency and did not wish to schedule parenting time. Petitioner and respondent agreed that GEC would be placed in a residential placement, and GEC was admitted to residential placement.

---

[1] The record indicates that respondent has a history of involvement with Child Protective Services (CPS). On November 2, 2013, CPS received a report that respondent was intoxicated and involved in a physical fight with her husband while GEC was present. On October 3, 2019, CPS received a report that respondent and GEC were in a physical fight and respondent was arrested. The family successfully completed services with Families First in 2019.

Respondent thereafter admitted the allegations of the petition. The trial court then assumed jurisdiction of GEC on the bases that respondent failed to provide "support, education, medical, surgical, or other necessary care for health or morals" of GEC, and because respondent's home was "an unfit home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult or other custodian."

Petitioner created a case service plan identifying the goal of the plan as reunification of GEC with respondent. The case service plan recommended to the trial court that respondent establish and maintain a legal source of income, not possess or use alcohol, illegal substances, or prescription medication not prescribed for her, obtain and complete substance abuse treatment at her own expense, submit to drug and alcohol testing whenever required by the foster care worker, attend AA/NA weekly and verify attendance to the foster care worker, participate in psychological evaluation, participate in counseling, participate in parenting classes, establish and maintain a suitable home and not allow other adults to live in the home without the approval of the foster care worker, allow the foster care worker to inspect respondent's home, and reimburse the trial court for the cost of care and services.

A dispositional hearing was held October 20, 2021, at the conclusion of which the trial court entered an order of disposition, finding that custody of the child with respondent "presents a substantial risk of harm to the child's life, physical health, or mental well-being." The trial court ordered that "[r]easonable efforts shall be made to preserve and reunify the family to make it possible for the child to safely return home" and ordered respondent to "comply with and benefit from the case service plan."

Respondent now appeals the October 20, 2021 dispositional order of the trial court, challenging the trial court's order that she participate in a variety of services to overcome the barriers to GEC being placed in her home. Respondent also challenges the trial court's August 25, 2021 order authorizing the filing of the petition.

## II. DISCUSSION

### A. AUTHORIZATION OF PETITION

Respondent contends that the trial court erred by authorizing the filing of the petition. Respondent argues that contrary to petitioner's assertions, she did not abandon GEC nor improperly supervise her; rather, she sought urgent psychiatric care for GEC at Beacon and at Cedar Creek Hospital, and thereafter agreed to petitioner placing GEC in a residential facility for psychiatric care. Respondent argues that the trial court should have referred the matter for alternative services rather than authorizing the filing of the petition.

A review of the record indicates that respondent challenges the trial court's authorization of the petition for the first time on appeal. This issue therefore is unpreserved. See *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). This Court reviews unpreserved issues for plain error affecting substantial rights, meaning that the error caused prejudice, i.e., affected the outcome of the proceedings. *In re Beers*, 325 Mich App 653, 677; 926 NW2d 832 (2018).

In Michigan, child protective proceedings are governed by the juvenile code, MCL 712A.1 *et seq.* and subchapter 3.900 of the Michigan Court Rules. *In re Ferranti*, 504 Mich 1, 14; 934

-3-

NW2d 610 (2019). Under the juvenile code, a circuit court has jurisdiction over a proceeding concerning a child under age 18 whose parent "neglects or refuses to provide proper or necessary . . . care" or whose "home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent . . . is an unfit place for the juvenile to live in." MCL 712A.2(b)(1) and (2).

After conducting a preliminary investigation, DHHS may petition the family division of the circuit court to assume jurisdiction of a child. *In re Ferranti*, 504 Mich at 15. The petition is a complaint alleging that "a parent, guardian, nonparent adult, or legal custodian has harmed or failed to properly care for a child." MCR 3.903(A)(20). The petition must include "[t]he essential facts that, if proven, would allow the trial court to assume jurisdiction over the child." *In re Ferranti*, 504 Mich at 15 (quotation marks and citation omitted); see also MCL 712A.2(b); MCR 3.961(3). Authorizing the petition is a determination by the trial court that the petition is sufficient to be delivered to and accepted by the clerk of the court. *In re Kyle*, 480 Mich 1151; 746 NW2d 302 (2008).

Upon receiving the petition from DHHS, the trial court is required to hold a preliminary hearing in cases in which the child has been taken into temporary custody. MCR 3.965(A); *In re Ferranti*, 504 Mich at 15. During the preliminary hearing, the trial court must decide "whether to authorize the filing of the petition and, if authorized, whether the child should remain in the home, be returned home, or be placed in foster care pending trial." MCR 3.965(B)(12). After holding the preliminary hearing, the trial court "may authorize the filing of the petition upon a finding of probable cause that one or more of the allegations are true and could support the trial court's exercise of jurisdiction under MCL 712A.2(b)." *In re Ferranti*, 504 Mich at 15. Alternatively, the trial court may deny authorization of the petition or refer the matter for alternative services. MCR 3.965(B)(5).

When the child is not in temporary custody and the petition is not accompanied by a request for placement of the child the trial court may instead conduct a "preliminary inquiry" to determine the appropriate action to be taken on the petition. MCR 3.962(A); *In re Ferranti*, 504 Mich at 15 n 6. A preliminary inquiry is an "informal review by the court to determine appropriate action on a petition." MCR 3.903(A)(23). Following a preliminary inquiry, the trial court may either deny the filing of the petition, may refer the matter for alternative services, or may authorize the filing of the petition. MCR 3.962(B); *In re England*, 314 Mich App 245, 263; 887 NW2d 10 (2016).

To summarize, after either a preliminary hearing or a preliminary inquiry, the trial court *may* authorize the filing of the petition if the petition complies with MCR 3.961(B) and if the trial court determines that probable cause exists to believe that one or more of the allegations of the petition are true and could support the trial court's exercise of jurisdiction under MCL 712A.2(b). See *In re Ferranti*, 504 Mich at 15 n 6. The trial court's decision either to dismiss the petition, refer the matter to alternative services, or authorize the petition upon a finding of probable cause is thus within the trial court's discretion. See *People v Arnold*, 502 Mich 438, 467; 918 NW2d 164 (2018) (use of the word "may" ordinarily means an action is permissive). For purposes of a preliminary inquiry, the court rule permits the trial court to determine that probable cause has been established "with such information and in such a manner as the court deems sufficient." MCR 3.962(B)(3). The court rule thus gives the trial court broad discretion to determine whether

sufficient evidence has been presented to establish probable cause to authorize the filing of the petition.

In this case, respondent contends that the trial court erred by authorizing the petition, and argues that the trial court instead should have referred this matter for alternative services under MCR 3.962(B). As discussed, under MCL 712A.13a(2), a trial court may authorize the filing of a petition at the end of a preliminary hearing or inquiry "upon a showing of probable cause that 1 or more of the allegations in the petition are true and fall within the provisions of section 2(b) of this chapter." MCL 712A.2(b)(1) and (2) permit a court to take jurisdiction over a minor whose parent "neglects or refuses to provide proper or necessary . . . care" or whose "home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent . . . is an unfit place for the juvenile to live in." MCL 712A.2(b)(1) and (2).

Here, the petition asserted the bases of jurisdiction over GEC as (1) respondent neglecting and/or abandoning GEC and (2) respondent's home being unfit, and further alleged that it was contrary to GEC's welfare to remain in the care of respondent due to improper supervision and abandonment, that respondent had a history of alcohol abuse, and respondent was unwilling to care for GEC. To support these allegations, petitioner presented in the petition respondent's criminal history, history of CPS involvement, and history of physical fights with GEC, the inadequacy of respondent's housing, lack of food in respondent's home, and lack of guidance and emotional support for GEC. The petition also outlined GEC's mental health challenges and respondent's unwillingness to permit GEC to return to respondent's home. Ample information in the record supports the allegations of the petition, and the trial court's finding that 1 or more of the allegations in the petition are true and fall within the provisions of section 2(b) therefore was supported by the record. Given the broad discretion afforded to the trial court in deciding whether to authorize the petition upon a finding of probable cause, it cannot be said that the trial court plainly erred by authorizing the petition.

We also observe that after the petition was authorized respondent admitted the allegations of the petition. The authorizing of the petition is the precursor to the trial court determining whether it can exercise jurisdiction over the child, suggesting that the primary purpose of the preliminary inquiry is for the trial court to make a probable cause determination. If the trial court authorizes the petition, the adjudication phase occurs during which the trial court must determine whether a statutory basis for exercising jurisdiction exists. *In re Ferranti*, 504 Mich at 15. Jurisdiction is established if the petitioner proves the allegations of the petition at trial, see MCR 3.972, or if the respondent parent enters a plea of admission or no contest to the allegations of the petition. *In re Ferranti*, 504 Mich at 15. Here, it cannot be said that the trial court plainly erred by authorizing the filing of the petition (i.e., finding probable cause) when respondent's subsequent admission of the allegations of the petition enabled the trial court to find that a preponderance of the evidence demonstrated one or more of the statutory grounds for jurisdiction alleged in the petition. Any error thus did not prejudice respondent.

Respondent makes a valid practical argument that the trial court could have referred the matter for alternative services. GEC is 17 years old, suffers from mental health issues, and is violent. The record indicates that GEC needs continuing residential mental health care and that GEC is too violent to be placed in an ordinary home. The record also supports respondent's assertion that she is not capable of providing GEC with adequate care, and the case service plan

-5-

confirms that respondent's home is not an adequate placement for GEC at this time. It seems unlikely that in the short months before GEC's eighteenth birthday, services would enable respondent to overcome the existing barriers and provide an adequate home for GEC, even if she were inclined to do so. Nonetheless, the trial court had broad discretion to determine whether to authorize the filing of the petition and there was ample evidence in the record to support the trial court's decision to authorize the filing of the petition in this case. The trial court therefore did not plainly err in authorizing the filing of the petition.

## B. DISPOSITIONAL ORDER

Respondent contends that the trial court erred by issuing a dispositional order that required her to engage in numerous services that are unrelated to the facts of this case, and that any services ordered should have been tailored to respondent's specific needs. We note that respondent did not challenge the adequacy of the services ordered before the trial court. This issue therefore is unpreserved, see *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012), and we review the issue for plain error affecting substantial rights. *In re Beers*, 325 Mich App at 677.

Once the trial court has taken jurisdiction of the child, the case proceeds with either efforts to reunify the child with the parent or the case proceeds to termination of the parent's parental rights. See *In re Sanders*, 495 Mich 394, 407; 852 NW2d 524 (2014) (The dispositional phase concludes with a permanency planning hearing resulting in either family reunification or the trial court directing the agency to file a petition seeking termination of parental rights). With limited exceptions, "reasonable efforts to reunify the child and family must be made in all cases." MCL 712A.19a(2); *In re Hicks*, 500 Mich 79, 85; 893 NW2d 637 (2017). Thus, once the trial court authorized petitioner to file the petition in this case, and then took jurisdiction of the child, the trial court was required to order petitioner to make reasonable efforts toward reunification despite respondent's unwillingness to resume custody of GEC.

As part of the reasonable efforts, DHHS must create a case service plan outlining the steps that the agency and the parents will take to rectify the issues that led to court involvement and thereby achieve reunification. MCL 712A.18f(3)(d); *In re Hicks*, 500 Mich at 85-86. The case service plan is required to include a "[s]chedule of services to be provided to the parent . . . to facilitate the child's return to his or her home." *Id*. at 86, quoting MCL 712A.18f(3)(d). Before entering a dispositional order, the trial court reviews the case service plan and may order the parent to comply with the services outlined in the case service plan. *In re Sanders*, 495 Mich at 407. MCL 712A.18f(4) describes the process by which the trial court may order the parent to comply with a case service plan:

> Before the court enters an order of disposition, the court shall consider the case service plan; any written or oral information offered concerning the child . . . ; and any other evidence offered, including the appropriateness of parenting time, which information or evidence bears on the disposition. The order of disposition shall state whether reasonable efforts have been made to prevent the child's removal from his or her home or to rectify the conditions that caused the child's removal from his or her home. The court may order compliance with all or any part of the case service plan as the court considers necessary.

Similarly, MCR 3.973(F) provides, in relevant part:

> (1) The court shall enter an order of disposition as provided in the Juvenile Code and these rules.
>
> (2) The court shall not enter an order of disposition until it has examined the case service plan as provided in MCL 712A.18f. The court may order compliance with all or part of the case service plan and may enter such orders as it consider necessary in the interest of the child.

Although the trial court's dispositional orders must be "appropriate for the welfare of the juvenile and society in view of the facts proven and ascertained," MCL 712A.18(1), the trial court otherwise has broad authority in effectuating its dispositional orders regarding a child within its jurisdiction. *In re Sanders*, 495 Mich at 406. This Court affords considerable deference to the trial court's dispositional orders and does not overturn the trial court's dispositional orders absent clear error. *Id*.

Respondent argues that the services provided by the agency should be tailored to the needs of each individual parent. Respondent does not cite authority to support her argument, thereby abandoning this issue on appeal. See *In re ASF*, 311 Mich App 420, 440; 876 NW2d 253 (2015). Although there is authority that services provided by the DHHS should be tailored to the needs of the individual, courts addressing this issue usually are discussing a special need of the parent, such as a disability that requires accommodation to effectively provide the service. See, e.g., *In re Hicks*, 500 Mich at 90 (discussing tailoring services to the parent's intellectual disability). Here, respondent does not contend that the services are not within her ability to perform, but rather that the services ordered by the trial court that were outlined in the case service plan are standard, boiler-plate recommendations that are not related to her needs and are overreaching. However, respondent declined to participate with petitioner in developing the case service plan, which would have been an opportunity to tailor the services to her needs.

To summarize, once the trial court authorized the petition and took jurisdiction of the child, the trial court was obligated either to order petitioner to seek termination of respondent's parental rights or to order petitioner to attempt to reunify respondent with GEC. The trial court ordered petitioner to seek reunification, which required petitioner to make reasonable efforts to do so, including developing a case service plan outlining the services recommended. Petitioner did so without input from respondent because she declined to participate, asserting that she did not want to regain custody of GEC. Consequently, the services are not as specifically tailored to respondent's needs as they might have been if respondent had participated in the process. The services ordered were not inadequate, although they were perhaps excessive under the circumstances. Respondent, however, points to no authority to support the conclusion that the trial court plainly erred by ordering the services identified in the case service plan under the circumstances of this case.

We conclude that the trial court did not plainly err by authorizing the filing of the petition, and that the trial court did not plainly err by ordering respondent to comply with the services outlined in the case service plan.

Affirmed.

/s/ Michael F. Gadola
/s/ Deborah A. Servitto
/s/ James Robert Redford