*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* H. WARDIA, Minor.

UNPUBLISHED
June 23, 2022

No. 358909
Macomb Circuit Court
Family Division
LC No. 2021-000229-NA

Before: LETICA, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Respondent-mother, the only parent to this appeal, appeals as of right the trial court's order directing petitioner Department of Health and Human Services ("DHHS") to remove HW from her custody on a temporary basis. On appeal, respondent argues that the trial court erroneously directed removal without affording her the heightened procedural protections of the Indian Child Welfare Act, 25 USC 1901 *et seq.*, ("ICWA"), and the Michigan Indian Family Preservation Act, MCL 712B.1 *et seq.*, ("MIFPA"), and by failing to make the preliminary factual findings required by MCR 3.963(B), MCR 3.965(C)(2), and MCL 712A.13a(9) before removal. We affirm.

## I. FACTS

On September 22, 2021, the trial court entered an ex parte order directing petitioner to immediately take custody of HW from respondent. The order stated that under MCL 712A.2(b) and MCR 3.963(B), HW was at a substantial risk of harm, and immediate removal from her surroundings was necessary to protect her health and safety. The order further stated that continuing to reside in the home was contrary to her welfare for several particular reasons.

A preliminary hearing was held the following day. At the hearing, upon questioning by the referee, respondent indicated that she had "Native American Indian lineage." Respondent did not know her tribal affiliation, and the referee continued the preliminary hearing to allow petitioner "to give notice to the BIA regarding natural mother's alleged Native American Indian lineage." The referee also directed respondent to surrender HW to the local police department.

The same day, the trial court entered the following order memorializing the referee's statements on the record:

-1-

CONTINUE FOR DHHS TO COMPLY WITH INDIAN CHILD WELFARE ACT (ICWA). NATURAL FATHER DENIED NATIVE AMERICAN INDIAN LINEAGE. NATURAL MOTHER ASSERTS LINEAGE BUT DOES NOT HAVE KNOWLEDGE OF TRIBAL AFFILIATION. DHHS SHALL PROVIDE NOTICE TO THE BIA AND PROVIDE DOCUMENTATION OF SAME AS DEFINED IN IN RE MORRIS.

CHILD HAS NOT YET BEEN BROUGHT INTO CARE. . . .

Respondent absconded with HW for about a month. Meanwhile, on October 13, 2021, respondent filed a claim of appeal from the September 23, 2021 order quoted above.

On October 20, 2021, petitioner filed a petition requesting that the trial court assume jurisdiction over HW pursuant to MCL 712A.2(b). On October 22, 2021, the trial court held a preliminary hearing and found probable cause to authorize the petition. The transcript of that hearing is not included in the record. An order entered that day on a SCAO-approved standard form included the following relevant findings:

14.  a. Contrary to the welfare findings were made in a prior order.

b. It is contrary to the welfare of the child(ren) to remain in the home because: (Attach separate sheets as necessary.)

ADDITIONAL FINDINGS PLACED ON RECORD INCLUDING MOTHER'S TRUANCY WITH THE CHILD.

15.  a. Consistent with the circumstances, reasonable efforts to prevent or eliminate removal of the child(ren) from the home were made as determined in a prior order.

b. Consistent with the circumstances, reasonable efforts were made to prevent or eliminate removal of the child(ren) from the home. Those efforts include . . .

* * *

ADDITIONAL FINDINGS PLACED ON RECORD INCLUDING THE DEPARTMENT OF HEALTH AND HUMAN SERVICES EFFORTS TO LOCATE THE CHILD.

* * *

19. Custody of the child(ren) with the parent/guardian/legal custodian

a. presents a substantial risk of harm to the child(ren)'s life, physical health, or mental well-being.

No provision of service or other arrangement except removal of the child(ren) is reasonably available to adequately safeguard the child(ren) from the risk of harm to the child(ren)'s life, physical health, or mental well-being.

Conditions of custody at the placement away from the home and with the individual with whom the child(ren) is/are placed are adequate to safeguard the child(ren)'s health and welfare.

The order further provided that HW was to be placed within the custody of petitioner for care and supervision, that respondent's parenting time was suspended, that the legal father's parenting time was supervised, and that reasonable efforts shall be made to preserve and reunify the family.

On November 10, 2021, the trial court held a pretrial hearing to discuss scheduling matters. The same day, the trial court entered an order stating as follows:

CHILD WAS REVIEWED AND ALL NEEDS ARE MET.

FURTHER, THE COURT IS IN RECEIPT OF GREEN CARDS RECEIVED BY THE BIA ON 10/5/21. THERE HAS BEEN NO AFFIRMATION OF ELIGIBILITY OR MEMBERSHIP TO ANY TRIBE OR BAND.[1]

This appeal is now before this Court.

## II. ICWA AND MIFPA

Respondent argues that the trial court improperly directed on September 23, 2021, that HW be removed from her custody by petitioner without complying with the ICWA and the MIFPA. This issue is unpreserved,[2] but in any event, it is meritless. "This Court reviews de novo the

---

[1] A "green card," in this context, is a certified mail receipt indicating that the Bureau of Indian Affairs (BIA) has received notice of a child's possible Indian heritage. See *In re Jacqueline T*, 2003 WL 22719215 (Cal Ct App, 2003).

[2] An issue must be raised in the trial court to be preserved for review. See *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). Here, respondent never argued below that the trial court erroneously removed HW from her custody without affording her the heightened procedural protections of the ICWA and the MIFPA. This issue is therefore arguably waived. See *Johnson v Arkansas Dep't of Human Servs*, 481 SW3d 463, 464 (Ark Ct App, 2016) (holding that the mother's argument that the department failed to present a "qualified expert witness" as required by the ICWA before terminating her parental rights was unpreserved and therefore waived because she did not raise the argument in the trial court). Alternatively, the alleged error may only be considered forfeited because respondent did not specifically acquiesce to the alleged error. See *People v Davis*, ___ Mich ___, ___; ___ NW2d ___ (2022) (Docket No. 161396); slip op at 7-8.

-3-

interpretation of statutes and court rules." *Simcor Constr, Inc v Trupp*, 322 Mich App 508, 513; 912 NW2d 216 (2018) (cleaned up).

"In 1978, Congress enacted ICWA in response to growing concerns over abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." *In re Morris*, 491 Mich 81, 97; 815 NW2d 62 (2012) (quotation marks and citations omitted). The "ICWA establishes various substantive and procedural protections intended to govern child custody proceedings involving Indian children." *Id*. at 99.

"Indian child" is defined by 25 USC 1903(4) as follows:

"Indian child" means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]

"[B]oth subparts (a) and (b) require a determination of tribal membership or eligibility for tribal membership, and it is well established that only the Indian tribe can determine its membership." *In re Morris*, 491 Mich at 100. "Therefore, when there are sufficient indications that the child may be an Indian child, the ultimate determination requires that the tribe receive notice of the child custody proceedings, so that the tribe may advise the court of the child's membership status." *Id*. In this regard, 25 USC 1912(a) governs the "notice" requirement that applies when a child may be an Indian child:

In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary[.]

Under 25 USC 1912(a), when the tribe of the possible Indian child cannot be immediately identified, "notice must be sent to the 'Secretary,' meaning the Secretary of the Interior." *In re Morris*, 491 Mich at 103. "[F]or proceedings in Michigan, it is actually sent to the Minneapolis Area Director, Bureau of Indian Affairs." *Id*. at n 14.

When it is determined that the child meets the definition of "Indian child," the heightened protections of the ICWA apply to the proceedings. See *In re England*, 314 Mich App 245, 250; 887 NW2d 10 (2016). One such heightened protection is that "[n]o foster care placement may be ordered . . . in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the

parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 USC 1912(e).

Conversely, when "it is determined on the record that the child does not meet the definition of an 'Indian child,'" the heightened protections do not apply. See 25 CFR 23.107(b)(2). Until the latter determination is made, the trial court should "[t]reat the child as an Indian child." *Id*. If a trial court complies with the notice requirements of 25 USC 1912(a) and receives no additional information or confirmation concerning the child's possible Indian heritage, it may properly determine that the ICWA does not apply. See 25 CFR 23.112(a) ("No foster-care-placement or termination-of-parental-rights proceeding may be held until at least 10 days after receipt of the notice by the parent (or Indian custodian) and by the Tribe (or the Secretary)."); *In re KP*, 2005 WL 2697248 (Cal Ct App, 2005) ("Absent a showing to the contrary, it must be presumed that on July 9, 2003, when the court stated, 'ICWA return receipts and notices filed with the court' and 'ICWA does not apply[,]' the court had before it documentation showing the strict notice requirements had been satisfied.").

The MIFPA is the state analog to the federal ICWA. See *In re McCarrick/Lamoreaux*, 307 Mich App 436, 463-464; 861 NW2d 303 (2014). It is substantively identical to the ICWA in all respects relevant to this case. In particular, the MIFPA defines "Indian child," see MCL 712B.3(k), requires notice to the BIA, see MCL 712B.9, and provides that "[a]n Indian child may be removed from a parent or Indian custodian . . . only upon clear and convincing evidence that . . . the continued custody of the Indian child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the Indian child. The evidence must include the testimony of at least 1 qualified expert witness . . . . ," MCL 712B.15(2).

In this case, at the beginning of the September 23, 2021 hearing, the trial court asked respondent whether she had any Indian heritage. See 25 CFR 23.107(a) ("State courts must ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child. The inquiry is made at the commencement of the proceeding and all responses should be on the record."). Once respondent answered in the affirmative, the trial court was then required to comply with the notice provision of the ICWA, 25 USC 1912(a), and the MIFPA, MCL 712B.9. Further, because respondent did not specifically identify one or more Indian tribes to which she may belong, petitioner was required to send notice to the Secretary of the Interior. See *In re Morris*, 491 Mich at 103. The record shows that the trial court promptly ordered petitioner to do so and waited 10 days as required by those two statutes. In this regard, the referee stated at the October 14, 2021 hearing that "[t]he Court is in receipt of a copy of the green card, as well as the request for certified mail indicating that notifications went to the BIA Midwest Region. The card was signed for BIA Midwest Region on 10-5, and ten days has not elapsed." Several days later, on November 10, 2021, the trial court entered an order stating that "THE COURT IS IN RECEIPT OF GREEN CARDS RECEIVED BY THE BIA ON 10/5/21. THERE HAS BEEN NO AFFIRMATION OF ELIGIBILITY OR MEMBERSHIP TO ANY TRIBE OR BAND." Given that HW was not determined to be an Indian child following compliance with 25 USC 1912(a) and MCL 712B.9, the trial court was permitted to proceed without affording respondent the heightened protections of the ICWA and the MIFPA, including the requirements of clear and convincing evidence and

expert testimony before removal.[3]  See *In re England*, 314 Mich App at 250 (explaining that the heightened procedural protections of the ICWA and the MIFPA apply when a child is an "Indian child").

Simply put, respondent is mistaken that because she claimed Indian heritage at the September 23, 2021 hearing, the trial court was required to afford her all of the procedural protections of the ICWA and the MIFPA relating to removal.  Claiming Indian heritage without identifying a specific tribal affiliation only entitled her to notice to the BIA under those two statutes.  The remaining protections under those two statutes become operative once the child is determined to be an "Indian child," which did not occur here.  Consequently, at no point in these proceedings was the trial court required to comply with the ICWA and the MIFPA requirements of clear and convincing evidence and expert testimony before removal.[4]

## III.  REQUISITE FACTUAL FINDINGS

Respondent argues that the trial court failed to make the requisite factual findings under MCR 3.963(B), MCR 3.965(C)(2), and MCL 712A.13a(9) before ordering removal of HW from her custody.  Relatedly, respondent argues that the trial court clearly erred by purportedly finding that remaining in the home was likely to result in serious emotional or physical damage to HW.[5]

---

[3] It is true that the trial court did not specifically recite such words as "HW is not an Indian child" or "ICWA does not apply."  However, such a conclusion is clearly implied by the trial court's statement that "THERE HAS BEEN NO AFFIRMATION OF ELIGIBILITY OR MEMBERSHIP TO ANY TRIBE OR BAND."

[4] Incidentally, while not necessary to resolve this appeal, 25 CFR 23.113 governs emergency proceedings involving an Indian child.  It provides that a state court may order removal of an Indian child on an emergency basis upon a finding that "the emergency removal or placement is necessary to prevent imminent physical damage or harm to the child."  25 CFR 23.113(b)(1).  It also provides certain procedural limitations, such as the limitation that an emergency removal cannot extend beyond 30 days without a finding that "[r]estoring the child to the parent or Indian custodian would subject the child to imminent physical damage or harm."  25 CFR 23.113(e)(1).  Notably, emergency removal is not required to be supported by clear and convincing evidence or expert testimony.  Thus, even if HW was determined to be an Indian child—which she was not— the trial court's September 22 and 23, 2021 orders were still not erroneous because a state court retains the authority to order emergency removal without the support of clear and convincing evidence or expert testimony.

[5] As previously noted, 25 USC 1912(e) of the ICWA and MCL 712B.15(2) of the MIFPA require the trial court to find, by clear and convincing evidence, that the absence of pretrial removal "is likely to result in serious emotional or physical damage to the child."  Respondent is not entitled to these specific statutory protections concerning "serious emotional or physical damage to the child" because HW was not determined to be an Indian child.  However, the essence of respondent's argument is that the trial court clearly erred by finding that removal of HW from her custody was necessary under the applicable court rules and statutes.

These issues are unpreserved because respondent did not raise them in the trial court,[6] but in any event, they are meritless.

"This Court reviews de novo the interpretation of statutes and court rules*." Simcor Constr, Inc*, 322 Mich App at 513 (cleaned up). "A trial court's factual findings are reviewed for clear error." *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020). "A finding is only clearly erroneous if an appellate court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

MCR 3.963(B) provides as follows with regard to an emergency removal order:

> (1) *Order to Take Child into Protective Custody*. The court may issue a written order, electronically or otherwise, authorizing a child protective services worker, an officer, or other person deemed suitable by the court to immediately take a child into protective custody when, after presentment of a petition or affidavit of facts to the court, the court has reasonable cause to believe that all the following conditions exist, together with specific findings of fact:

> (a) The child is at substantial risk of harm or is in surroundings that present an imminent risk of harm and the child's immediate removal from those surroundings is necessary to protect the child's health and safety. . . .

> (b) The circumstances warrant issuing an order pending a hearing in accordance with:

> (*i*) MCR 3.965 for a child who is not yet under the jurisdiction of the court . . .

> * * *

> (c) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

> (d) No remedy other than protective custody is reasonably available to protect the child.

> (e) Continuing to reside in the home is contrary to the child's welfare.

Both MCR 3.965(C)(2) and MCL 712A.13a(9) provide as follows with regard to a pretrial removal order:

> The court may order placement of the child in foster care if the court finds all of the following conditions:

---

[6] See note 2, *supra*.

-7-

(a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.

(b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from risk as described in subdivision (a).

(c) Continuing the child's residence in the home is contrary to the child's welfare.

(d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

(e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare.

"MCR 3.965(C)(2) and MCL 712A.13a(9) explicitly require that the trial court find *all* the factors prior to removing a child from a parent's care." *In re Williams*, 333 Mich App 172, 184; 958 NW2d 629 (2020). This is because "when a statute or court rule requires factual findings as to an enumerated list of factors, the trial court must make a record of its findings as to each and every factor sufficient for this Court to conduct a meaningful review." *Id*. at 183.

In addition, although not cited by respondent, MCR 3.965(C)(3) requires that the trial court particularly find that "it is contrary to the welfare of the child to remain at home," and MCR 3.965(C)(4) requires that the trial court particularly find that "reasonable efforts to prevent the removal of the child have been made or that reasonable efforts to prevent removal are not required." *In re Benavides*, 334 Mich App at 168.

With regard to the respective September 22 and 23, 2021 emergency removal orders directing that petitioner remove HW from respondent's custody on an emergency basis, the former order included the findings required by MCR 3.963(B). The order provided that HW was at a substantial risk of harm or was in surroundings that presented an imminent risk of harm; that immediate removal was necessary to protect her health and safety; that continuing to reside in the home was contrary to her welfare; that no other remedy was reasonably available to protect her; and that reasonable efforts were made to prevent or eliminate the need for removal. In addition, the order specifically stated that respondent threatened to shoot DHHS employees; brought HW to her legal father's home and became involved in a domestic-violence incident; violated a no-contact order with the legal father; and failed to take prescribed medication. These facts, taken together, show that respondent displayed at least a temporary mental instability that warranted removing HW from the home on an expedited basis for her protection until the issues could be resolved. While it is certainly true that a child should not always be removed from his or her home merely due to a parent's mental instability, the specific reference to violence by respondent supports the trial court's ultimate finding in this regard. At a minimum, given the clear error standard, we conclude that the trial court did not clearly err in its underlying findings by ordering emergency removal.

-8-

With regard to the October 22, 2021 pretrial order directing that petitioner retain custody of HW, that order included the findings required by MCR 3.965(C) and MCL 712A.13a(9).[7] As noted, the transcript of the October 22, 2021 preliminary hearing is not included in the record. However, the order memorializing the findings of that hearing is included in the record, and it satisfies the factors set forth in these provisions. Specifically, the trial court found that (1) "[i]t is contrary to the welfare of [HW] to remain in the home," (2) "reasonable efforts were made to prevent or eliminate removal of [HW] from the home," (3) "[c]ustody of [HW] with [respondent] presents a substantial risk of harm to [HW's] life, physical health, or mental well-being," (4) "[n]o provision of service or other arrangement except removal of [HW] is reasonably available to adequately safeguard [HW] from the risk of harm to [HW's] life, physical health, and mental well-being," and (5) "[c]onditions of custody at the placement away from the home and with the individual with whom [HW is] placed are adequate to safeguard [HW's] health and welfare." These five findings are in accordance with the five factors referenced by MCR 3.965(C)(2) and MCL 712A.13a(9). Moreover, the order indicates that the trial court made specific, additional findings on the oral record concerning the MCR 3.965(C)(3) requirement that "it is contrary to the welfare of the child to remain at home," and the MCR 3.965(C)(4) requirement that "reasonable efforts to prevent the removal of the child have been made or that reasonable efforts to prevent removal are not required." Thus, these two subrules were apparently satisfied as well.

Accordingly, respondent's argument that the trial court failed to make the factual findings required by MCR 3.963(B), MCR 3.965(C)(2), and MCL 712A.13a(9) is meritless. To the extent that respondent argues that the trial court clearly erred by finding that removal of HW from her custody was necessary, that argument is also meritless.

## IV. CONCLUSION

The trial court was not required to comply with the provisions of the ICWA and the MIFPA concerning removal of an Indian child, and the trial court made the factual findings required by MCR 3.963(B) for emergency removal, as well as the factual findings required by MCR 3.965(C) and MCL 712A.13a(9) for pretrial removal. In addition, there was no clear error in this regard. We affirm.

/s/ Anica Letica
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan

---

[7] Generally, a party may not challenge subsequent orders entered after the claim of appeal has been filed. See *Gracey v Grosse Pointe Farms Clerk*, 182 Mich App 193, 197; 452 NW2d 471 (1989) ("[W]hile an appeal from a final order . . . includes all prior interlocutory orders, . . . it does not bring before the reviewing court any subsequent orders."). It therefore arguable that respondent may only challenge the respective September 22 and 23, 2021 emergency removal orders, not the October 22, 2021 pretrial removal. In any event, that order was properly entered.