*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re EPPS/JACKSON, Minors.

UNPUBLISHED
October 19, 2023

No. 366064
Wayne Circuit Court
Family Division
LC No. 2023-000405-NA

Before: K. F. KELLY, P.J., and JANSEN and CAMERON, JJ.

PER CURIAM.

Respondent[1] appeals by right the trial court's order temporarily removing her minor children, ALE, NME, LMJ, MCJ, and OJJ, into protective custody. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In March 2023, petitioner, the Department of Health and Human Services ("Department") filed a temporary wardship petition requesting that the trial court exercise jurisdiction over the children. The petition alleged that following a referral from Child Protective Services ("CPS") on December 14, 2022, concerning the physical abuse of NME by her father, DE, a medical evaluation revealed injuries on NME's back which were consistent with physical abuse, and DE admitted to using physical discipline against NME. The petition also alleged that NME stated she was subject to physical abuse by JJ—the putative father of MJC—several times since returning to respondent's care. The petition set forth respondent's extensive contact with CPS beginning in 2009 as a result of improper supervision, physical neglect and abuse, medical neglect, and domestic violence.

At a preliminary hearing regarding the petition, DE asserted that his family possessed Cherokee, Seminole, and Blackfoot heritage but was not currently enrolled in any Indigenous Nation. No other party claimed Indigenous ties. Due to the implications of the Indian Child

---

[1] The fathers and putative fathers of the minor children were named as respondents in the petition; however, none are parties to the current appeal nor any other appeal pending in this Court.

Welfare Act, 25 USC 1901 *et seq.* ("ICWA"), and the Michigan Indian Family Preservation Act, MCL 712B.1 *et seq.* ("MIFPA"), the trial court did not authorize the petition in an effort to allow the Department to notify the applicable Indigenous Nations of the child protective proceedings. However, the trial court also determined that temporary removal of the minor children was warranted because of the extensive history of domestic violence regarding respondent, the physical abuse of NME, and respondent's failure to benefit from previously-offered services. This appeal followed.

## II. STANDARDS OF REVIEW

In general, an issue is preserved for appeal if it was raised in or decided by the trial court. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). Respondent did not advance that the trial court erroneously removed the minor children from her custody without affording her the heightened procedural protections of the ICWA and the MIFPA. Therefore, this issue is unpreserved for appellate review. See *Glasker-Davis*, 333 Mich App at 227.

This Court reviews unpreserved claims of error in termination of parental rights cases for plain error affecting substantial rights. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 5 n 3 (noting while the plain-error rule of *Carines*[2] does not apply to civil cases, it is applicable in termination of parental rights cases, which present different constitutional considerations); *Ayotte v Dept of Health & Human Servs*, 337 Mich App 29, 40; 972 NW2d 282 (2021). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Demski v Petlick*, 309 Mich App 404, 427; 873 NW2d 596 (2015) (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008). "This Court reviews de novo issues of law, including the interpretation and application of ICWA and [MIFPA]." *In re McCarrick/Lamoreaux*, 307 Mich App 436, 462-463; 861 NW2d 303 (2014).

## III. ANALYSIS

Respondent argues that the trial court erroneously directed removal of her minor children without affording her the heightened procedural protections of the ICWA and MIFPA. We disagree.

"Congress enacted ICWA in 1978 to respond to abusive child welfare practices that separated large numbers of Indian children from their families and harmed the children, their parents, and the Indian tribes." *In re McCarrick/Lamoreaux*, 307 Mich App at 463. The "ICWA establishes various substantive and procedural protections intended to govern child custody proceedings involving Indian children." *In re Morris*, 491 Mich 81, 99; 815 NW2d 62 (2012). An "Indian child" is defined by 25 USC 1903(4) as follows:

---

[2] *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

"Indian child" means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]

"[B]oth subparts (a) and (b) require a determination of tribal membership or eligibility for tribal membership, and it is well established that only the Indian tribe can determine its membership." *In re Morris*, 491 Mich at 100. "Therefore, when there are sufficient indications that the child may be an Indian child, the ultimate determination requires that the tribe receive notice of the child custody proceedings, so that the tribe may advise the court of the child's membership status." *Id*. 25 USC 1912(a) governs the "notice" requirement applicable to proceedings involving an Indian child:

> In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary[.]

Following the determination that a child meets the definition of "Indian child," the heightened protections of the ICWA apply to the child protective proceedings. *In re England*, 314 Mich App 245, 250; 887 NW2d 10 (2016). One example of such protections is that "[n]o foster care placement may be ordered . . . in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 USC 1912(e). Conversely, when "it is determined on the record that the child does not meet the definition of an 'Indian child,' " the heightened protections do not apply. 25 CFR 23.107(b)(2). If the trial court observes the notice requirements of 25 USC 1912(a) and receives no additional information or validation concerning the child's Indigenous heritage, it may properly determine that the ICWA is inapplicable. See 25 CFR 23.112(a) ("No foster-care-placement or termination-of-parental-rights proceeding may be held until at least 10 days after receipt of the notice by the parent (or Indian custodian) and by the Tribe (or the Secretary).").

The MIFPA is the state equivalent to the federal ICWA and is substantively identical with the ICWA in all respects relevant to this case. *In re McCarrick/Lamoreaux*, 307 Mich App at 463-464. The MIFPA defines "Indian child" under MCL 712B.3(k), mandates notice to the Bureau of Indian Affairs ("BIA") under MCL 712B.9, and provides

> "[a]n Indian child may be removed from a parent or Indian custodian only upon clear and convincing evidence that . . . the continued custody of the Indian child by the parent or Indian custodian is likely to result in serious emotional or physical

damage to the Indian child.  The evidence must include the testimony of at least 1 qualified expert witness . . . ."  [MCL 712B.15(2).]

In the instant case, at the beginning of the preliminary hearing, the trial court inquired whether respondent, DE, or JJ maintained any Indigenous heritage.  See 25 CFR 23.107(a) ("State courts must ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child. The inquiry is made at the commencement of the proceeding and all responses should be on the record.").  Once DE answered in the affirmative, the trial court was required to comply with the notice provision of the ICWA and the MIFPA.  In situations in which the specific alleged tribal heritage is alleged, as in this case, ICWA requires the Department to "notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention."  25 USC 1912(a).  MIFPA similarly requires the DHHS to "exercise due diligence to contact the Indian tribe or tribes in writing so that the tribe may verify membership or eligibility for membership."  MCL 712B.9(3).

The record demonstrates that the trial court promptly ordered the Department to acquire a genogram from DE, subsequently notify all the applicable Nations of the proceeding, and scheduled a continued preliminary hearing prior to authorizing the petition to determine whether NME qualified as an "Indian child" for purposes of the child protective proceedings.  The trial court further recognized the heightened standards applicable if NME possessed Indigenous heritage, stating:

There's a higher evidentiary standard in the State of Michigan for tribal children. It's not the lower standard for removal and for jurisdiction for non-tribal children. So, this is not a punishment.  It's certainly required for us to investigate this and we're happy to do so.  If the children are tribal, you get a response [petitioner], please call Attorney General Rebekah White so that she can make arrangements to have a tribal expert at the April 26th at noon hearing to testify on the practices and protocol of that specific tribe.

The court determined, however, the emergency removal of NME, and the remainder of the minor children, was warranted because of the extensive history of domestic violence featuring respondent, the physical abuse of NME, and respondent's refusal to benefit from previously offered DHHS services.  The trial court explained:

In the interim the Court finds it's clearly contrary to these five children to be in any home in which the mother, [DE] . . . or [JJ], resides.  Mother I asked the question if he was still in the home cause I had—you have a very fine lawyer, and I certainly was contemplating with some protection the children staying in your home; but when [the foster care worker] testified under oath she was there a week and a half ago and the man who's accused of abusing you and your oldest daughter whom he's not related is still in the home.

After the March 29, 2023 preliminary hearing, the Department provided the Cherokee, Seminole, and Blackfoot Nations, in addition to the BIA Midwest Region headquarters, with the relevant court notification documents and enrollment verification paperwork on April 4, 2023, via

-4-

certified mail. In compliance with 25 USC 1912(a), the trial court did not hold the continued preliminary hearing until April 26, 2023, as "[n]o foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary." Given that NME was not determined to be an "Indian child" after complying with 25 USC 1912(a) and MCL 712B.9, the trial court was permitted to continue the proceedings without affording respondent the heightened protections of the ICWA and the MIFPA, including the requirements of clear and convincing evidence and expert testimony before removal. See *In re England*, 314 Mich App at 250 (stating that the heightened procedural protections of the ICWA and the MIFPA only apply when a child is an "Indian child").

Accordingly, we reject respondent's assertion that because DE claimed Indigenous heritage at the March 29, 2023 preliminary hearing, the trial court was required to afford her all of the substantive and procedural protections of the ICWA and the MIFPA relating to the removal of the minor children. While the matter certainly triggered the notice requirements under the ICWA and MIFPA, the remaining protections only become operative once the minor is determined to be an "Indian child," which did not occur in this case. Consequently, at no point in these proceedings was the trial court required to comply with the additional procedural protections under the ICWA and MIFPA.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Kathleen Jansen
/s/ Thomas C. Cameron